IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| FEDERAL DEPOSIT INSRUANCE CORPORATION AS RECEIVER FOR BRADFORD BANK, <br><br> Plaintiff, <br><br> v. <br><br> DALLAS R. ARTHUR, *et al.*, <br><br> Defendants. | Civil Action No. RDB-14-604 |

## MEMORANDUM OPINION

Plaintiff Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Bradford Bank, brings this suit pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821 ("FIRREA"). The FDIC seeks damages in excess of $7.4 million from Defendants Dallas R. Arthur, Mary Beth Taylor, Gilbert D. Marsiglia, and John O. Mitchell, III (collectively, "Defendants"), four former officers of Bradford Bank. Defendants filed a Joint Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment (ECF No. 10). The Motion was fully and adequately briefed by both parties. The parties' submissions have been reviewed, and a hearing was held on February 24, 2015. *See* ECF No. 30. For the reasons that follow, Defendants' Joint Motion to Dismiss[1] (ECF No. 10) is GRANTED IN PART and DENIED IN PART. Specifically, it is

---

[1] The subject Motion is treated as a Motion to Dismiss, and not addressed alternatively as a Motion for Summary Judgment.

1

GRANTED as to Plaintiff's negligence claims (Counts I and III), which are dismissed, but it is DENIED as to the gross negligence claims (Counts II and IV).

## BACKGROUND

In a ruling on a motion to dismiss, this Court must accept the factual allegations in the plaintiff's complaint as true and construe those facts in the light most favorable to the plaintiffs. *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

The FDIC was appointed as receiver for Bradford Bank ("the Bank") on August 28, 2009. Pl.'s Compl. ¶¶ 1-2, ECF No. 1. The FDIC brings this suit seeking damages in excess of $7.4 million from Defendants, four former officers of the bank. *Id.* FDIC alleges that Defendants were negligent, grossly negligent, and breached their fiduciary duties to the Bank by ignoring the Bank's Loan Policy and failing to exercise due care in recommending and/or approving seven commercial loan transactions, resulting in substantial losses to the Bank.[2] *See Id.* ¶¶ 2-6.

Defendant Dallas R. Arthur ("Arthur") was President of Bradford Bank from March 26, 2001, a director from July 18, 2001, and a member of the Bank's Loan Committee (the "Loan Committee") from February 20, 2002 until the Bank failed in 2009. *Id.* ¶ 8.

Defendant Mary Beth Taylor ("Taylor") was the Bank's Senior Executive Vice President of Commercial Lending from July 26, 2001, until she resigned on November 17, 2008. *Id.* ¶ 9. In this capacity, Taylor earned ten percent commissions on fees generated by the bank's commercial loan unit. *Id.*

Defendant Gilbert D. Marsiglia ("Marsiglia") was a director of the Bank beginning in

---

[2] The loans at issue are described in Plaintiff's Complaint as Loans A-G, and, collectively, as the "Loss Transactions." Pl.'s Compl. ¶¶ 2-6.

February 19, 2003, and a member of the Loan Committee from July 23, 2003, until the Bank failed. *Id.* ¶ 10.

Defendant John O. Mitchell, III ("Mitchell") was a director of the Bank from April 20, 1983, and a member of the Loan Committee from February 29, 2002, until the Bank failed. *Id.* ¶ 11.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also*

*Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).[3]

## ANALYSIS

---

[3] As this Court is treating the subject Motion as a Motion to Dismiss, and not addressing the Motion alternatively as a Motion for Summary Judgment, the standard of review for Rule 56 of the Federal Rules of Civil Procedure is not set forth above.

## I. Plaintiff's Claims Are Not Barred by FIRREA's Statute of Limitations

In moving to dismiss the subject Complaint, Defendants first argue that FDIC's claims are time-barred by the statute of limitations. Plaintiff's claims arise from alleged tortious acts by Defendants in relation to the review and approval of seven commercial loans in 2006 and 2007. Under Maryland law, tort actions are subject to a three year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101. Plaintiff thus had until 2009 or 2013, respectively, to bring suit on the basis of these alleged tortious acts.

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821 ("FIRREA"), however, extends the time in which a claim may be filed beyond the period set by state law. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994). For this reason, courts commonly refer to Section 1821(d)(14) of FIRREA as the "Extender Statute." *See id.* Specifically, the Extender Statute provides that "the date on which the statute of limitations begins to run...shall be the later of – (i) the date of appointment of the Corporation (that is, of FDIC) as conservator or receiver; or (ii) the date on which the cause of action accrues." 12 U.S.C. § 1821(d)(14).

The FDIC was appointed receiver for Bradford Bank on August 28, 2009. Under the Extender Statute, Plaintiff thus was required to bring suit within three years of August 28, 2009 – that is, August 28, 2012. Based on the parties' submissions to this Court, it is evident that the parties recognized the impending August 28, 2012 statute of limitations, *see* Pl.'s Opp. Ex. 4, ECF No. 24-5. The FDIC then entered into a "Tolling Agreement" with Defendants to suspend the operation of the statute of limitations. *See id.* The agreement was

5

signed by Plaintiff and all Defendants on dates ranging from on July 8, 2012 to August 21, 2012. Defs.' Mot. to Dismiss Ex. 1, ECF No. 10-2.

The purpose of the Tolling Agreement was to allow the Parties "to continue settlement discussions further prior to the initiation of any formal proceeding by the FDIC against the Respondents." *Id.* In the event that settlement was not achieved, the "FDIC reserve[d] the right to file any of the Claims against any of the Respondents after providing seven (7) days prior written notice…" *Id.* The Agreement further provides that, "[t]he Respondents [here, Defendants] agree not to assert any defense based on Limitation Periods that may pass between the Effective Date and the Termination Date other than as specified herein." *Id.* The parties repeatedly extended the Tolling Agreement, with the fifth such amendment granting the FDIC the right to pursue claims until February 28, 2014. Plaintiff filed this action on that date. Defs.' Mot. to Dismiss Ex. 2, ECF No. 10-3.

Notwithstanding Defendants' voluntary submission to the Tolling Agreement and their willingness to extend the Agreement five times, Defendants now argue that the FDIC's claims must fail because Plaintiff filed this on February 28, 2014, nearly one-and-a-half years after the original August 28, 2012 deadline set by the Extender Statute of FIRREA. Defs.' Mot. to Dismiss, at 6-15. Defendants ask this Court to disregard the Tolling Agreement into which they previously entered. Despite their repeated consent to the Agreement, Defendants now dispute the validity of the Tolling Agreement, arguing that the express language of Section 1821(d)(14) prohibits contractual circumvention of FIRREA's statute of limitations. The text of the statute provides, in pertinent part:

6

> "Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be--
>
> ...
>
> **(ii)** in the case of any tort claim (other than a claim which is subject to section 1441a(b)(14) of this title), the longer of--
> **(I)** the 3-year period beginning on the date the claim accrues; or
> **(II)** the period applicable under State law."

12 U.S.C. § 1821(d)(14). Defendants thus argue that the Tolling Agreement's attempt to extend the FIRREA statute of limitations is unenforceable.

While the Defendants point to the United States District Court of Kansas's decision in *National Credit Union Admin. Bd. v. Credit Suisse Sec. (USA) LLC*, 939 F. Supp. 2d 1113 (D. Kan. 2013), the overwhelming weight of authority does not support the Defendants' position. Numerous federal district courts confronting this same issue have clearly held that parties may willingly contract around FIRREA's proscribed limits. *See FDIC v. Kime*, 12 F. Supp. 3d 1113, (S.D. Ind. 2014); *FDIC v. Williams*, No. 13-883, slip op. (D. Utah Oct. 8, 2014); *FDIC v. Bridges*, No. 13-347, slip op. (M.D. Ga. Sept. 30, 2014); *FDIC v. Jones*, No. 13-168, slip op. (D. Nev. Sept. 19, 2014); *FDIC v. Baldini*, 983 F. Supp. 2d 772 (S.D. W. Va. 2014); *FDIC v. Coleman*, No. 1:14-cv-00310-CWD, 2015 WL 476234 (D. Idaho Feb. 5, 2015). The question of whether parties may toll the statute of limitations by contract is a question of law for this Court to determine. *Kime*, 12 F. Supp. 3d at 1119. In this case, the Tolling Agreement at issue does not replace FIRREA's statute of limitations, but rather suspends its operation until a later date. It is thus enforceable, even given the express language of the Extender Statute.

Alternatively, Defendants contend that FIRREA's extender provision makes the statute one of repose – not of limitations.[4] Defs.' Mot. to Dismiss, at 11-14. As such, Defendants argue, this Court may not rely on equitable doctrines to enforce the Tolling Agreement. *Id.* In support of this argument, Defendants rely on the distinction between the two types of statutes enunciated by the United States Supreme Court in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014). The Supreme Court's analysis in *Waldburger*, however, addressed a different question than that presented here. In *Waldburger*, the Court held that, while the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), preempts state statutes of limitations, CERCLA does not preempt state statutes of repose. *Id.* at 2187 ("In light of the distinct purpose for statutes of repose, ... § 9658(b)(2) is best read to encompass only statutes of limitations..."). Finding the underlying North Carolina law to be a statute of repose, the Court held that CERCLA did not preempt this state law restriction.

There is no dispute regarding preemption present in this case. The parties agree that FIRREA's extender provision expressly allows claimants to bring suit even *after* state law statutes of limitations have passed. 12 U.S.C. § 1821(d)(14). Rather, Defendants argue that this Court should disregard Congress's use of the term "statute of limitations" as employed in Section 1821(d)(14) of FIRREA. *Id.* While the legislative label affixed to a statute "is instructive, but it is not dispositive," *Waldburger*, 134 S. Ct. at 2185, there is simply no basis

---

[4] A "statute of limitations" sets a "time limit for suing in a civil case, based on the date when the claim accrued." Black's Law Dictionary 1546 (9th ed. 2009). In contrast, a "statute of repose" places an "outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues, but instead from the date of the last culpable act or omission of the defendant." *Waldburger*, 134 S. Ct. at 2182 (citing Black's Law Dictionary 1546). A statute of repose is "equivalent to a cutoff . . . in essense an absolute bar on a defendant's temporal liability." *Waldburger*, 134 S. Ct. at 2183 (internal citations omitted).

for this Court to disregard the plain language of FIRREA. As the United States Court of Appeals for the Seventh Circuit noted, "Congress enacted FIRREA in the face of a national banking crisis, with the intent of maximizing the recovery of assets that the federal receivers (FDIC, RTC) held in the failed banks they inherited." *RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 456 (7th Cir. 1999). Interpreting FIRREA as a statute of limitations (rather than a statute of repose) both respects the plain language of the statute and is consistent with Congress's aim to "maximize[e] the recovery of assets" through the statute. *Id.*; *see also Bridges*, No. 13-347 at *5.

As FIRREA contains only a statute of limitations, the question of whether to enforce the statute is within this Court's equitable powers. *Waldburger*, 134 S. Ct. at 2183. In light of the Tolling Agreement into which the Parties entered *and willingly extended five times*, this Court holds that it would be inequitable to bar Plaintiff's claims as untimely. Indeed, a defendant who enters into a contract while believing the contract unenforceable cannot be said to be acting in good faith. *See Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 670 (Md. 2009). This Court also notes that Defendants expressly agreed not to assert any defenses based on the statute of limitations. Defs.' Mot. to Dismiss Ex. 1 ("The Respondents agree not to assert any defense based on Limitation Periods that may pass between the Effective Date and the Termination Date other than as specified herein."). As a matter of equity, this Court will give effect to the parties' Tolling Agreement.

Defendants finally argue that even if the Tolling Agreement is enforceable, the FDIC is still unable to proceed due to its alleged failure to satisfy the notice terms of the Agreement. Defs.'s Mot. to Dismiss, at 14-15. In light of the ongoing settlement

negotiations between the parties, the purpose of a notice provision was largely superfluous. *See* Pl.'s Opp. Exs. 4-A, 4-B, ECF Nos. 24-5, 25-6. There is little doubt that Defendants were aware that failure to reach an agreement on the FDIC's claims would result in the FDIC's bringing suit. *Id.* Moreover, Defendants suffer no material prejudice from Plaintiff's failure to comply strictly with the Tolling Agreement's notice provision, as they had more than ample time in which to reach a settlement before this action was filed.

For the foregoing reasons, the FDIC's action is not untimely under the Extender Statute of FIRREA. Defendants' Motion to Dismiss all claims as barred by the statute of limitations is thus DENIED.

## II. Gross Negligence – Not Mere Negligence – Is the Correct Standard of Liability for Director and Officer Conduct

In the event that Plaintiff's claims are not time-barred under FIRREA, Defendants move to dismiss Counts I and III of the subject Complaint for failure to state a claim for which relief may be granted. In Count I, the FDIC alleges that Defendants Arthur, Marsiglia, and Mitchell negligently breached the duty of care each owed as officers of Bradford Bank. Similarly, the FDIC contends in Count III that Defendant Taylor negligently breached her fiduciary duties as an officer of the Bank, but especially in her role overseeing the review and approval of loans by the Loan Committee. Defendants contend that gross negligence is the appropriate standard through which to judge their alleged acts, not ordinary negligence.

The starting point for this inquiry is the text of FIRREA itself. The statue provides, in pertinent part:

> "A director or officer of an insured depository institution may be held personally liable for monetary damages ...

10

> for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law."

12 U.S.C.A. § 1821(k). FIRREA defers to state law on the question of what constitutes gross negligence, but makes clear that gross negligence – not *mere* negligence – is a statutory prerequisite to recovery.

The parties dispute whether negligence or gross negligence applies to the conduct of corporate officers and directors in Maryland. The FDIC points to Maryland's codification of the business judgment rule to argue that corporate directors may be liable for mere negligence. Md. Code Ann., Corps. & Ass'ns § 2-405.1(a)(3) ("A director shall perform his duties as a director, including his duties as a member of a committee of the board on which he serves . . . (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances."). Defendants, however, aptly note that Maryland case law both predating and following the 1976 enactment of the above provision explains that a plaintiff may only overcome the business judgment rule with a showing of gross negligence.

Maryland courts have long held that the appropriate test to determine director liability is one of gross negligence. The Maryland Court of Appeals explicitly reasoned that:

> "The conduct of the corporation's affairs are placed in the hands of the board of directors and if the majority of the board properly exercises its business judgment, the directors are not ordinarily liable. This sound general rule, however, is subject to the important exception that directors will be held liable if they permit the funds of the corporation or the corporate property to be lost or wasted by their gross or culpable negligence."

*Parish v. Maryland & Virginia Milk Producers Ass'n*, 242 A.2d 512, 540 (Md. 1968). This standard was also upheld after the 1976 codification of the business judgment rule in

11

Maryland.[5] *See Billman v. State of Md. Deposit Ins. Fund Corp.*, 593 A.2d 684, 698 (Md. Ct. Spec. App. 1991). As a leading commentator on Maryland corporate law explains, "[t]here is no known indication that the General Assembly, in enacting Section 2-405.1 in 1976, thought that it was changing the prevailing gross and/or culpable negligence standard of *Parish*." James Hanks, Jr., *Maryland Corporations Law* § 6.6.

In this case, the conduct giving rise to the FDIC's Complaint consists of a series of business decisions made by Defendants as directors and officers of Bradford Bank. The business judgment rule's requirement that plaintiffs allege gross negligence therefore apply. This conclusion is consistent with the statutory language of FIRREA, which, while relying on state law standards of liability, sets a minimum floor – consistent with the business judgment rule – and expressly limits directors' and officers' liability to acts of gross negligence. 12 U.S.C.A. § 1821(k). Accordingly, Defendants' Motion to Dismiss Counts I and III of Plaintiff's Complaint alleging simple negligence is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' Joint Motion to Dismiss (ECF No. 10) is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to Plaintiff's negligence claims (Counts I and III), which are dismissed, but it is DENIED as to

---

[5] The *Parish* statement of the business judgment rule is also consistent with the Delaware Supreme Court's subsequent, landmark decision in *Smith v. Van Gorkom*, 488 A.2d 858, 873 (Del. 1985) ("We think the concept of gross negligence is also the proper standard for determining whether a business judgment reached by a board of directors was an informed one."). Maryland courts routinely refer to "Delaware's acknowledged leadership in developing a coherent body of corporate law to which we and many other states ordinarily look for guidance." *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 427 (Md. 2009).

the gross negligence claims (Counts II and IV).

A separate Order follows.

Dated: March 2, 2015

/s/ _Richard D. Bennett_

Richard D. Bennett
United States District Judge